Good morning, and may it please the Court, Mark West on behalf of Appellant and Plaintiff Dave Roberts. We're here today because the Appellant claims the trial court granted summary judgment without assuring by defendants sufficient evidence to show that there's no triable issue of fact in this case. We believe we showed that there were triable issues of fact. However, the defendant in its brief raised a laundry list of things that possibly could have been a cause of the plaintiff's stroke. But they submitted no doctor's declaration, no expert's declaration that said that they were possible causes of the stroke. They didn't ask anybody to take judicial notice that cigar smoking might lead to a stroke or high blood pressure. No expert testimony to say that his minimal drinking caused or contributed to causing his stroke. All they want to do is take out the blood pressure monitor, say, no, it had nothing to do with it. It didn't cause his stroke. Conceitedly, the blood pressure monitor itself did not cause the stroke. His high blood pressure caused the stroke. But we contend that the defective blood pressure monitor did play a substantial role in leading to the stroke. Let me ask you this, Fairheid, up front. What evidence do I have in this record besides that your client compared his machine to the doctor's machine that this was a defective product? Also, his testimony that it was reading and giving him normal blood pressure. Well, that's what he said. But that could happen if, in fact, it was not a defective machine. The only evidence I found in this record that it might have been defective is that it didn't equal what was in the doctor's office machine. I'm trying to figure out what testimony then I have that this makes it defective. If the defendant's claim is that this blood pressure monitor is tested to the gold standard and gives you a better result than what's in the doctor's office, and this patient is reading it every single day or every other day. It has nothing to do with the patient reading it every other day. The patient can read it every other day, and it can be defective or it can be effective. What I'm asking you is, what evidence is there in this record besides one time he looked at the doctor's office and now it wasn't exactly the same that this was defective? Is our contention that, circumstantially, the fact that he had the stroke and his doctor says after he has the stroke, this has been a result? The doctor never said that the machine was the problem, but the doctor said that he had low blood pressure in certain times which caused it. But that doesn't say anything. Again, I'm back to this. Even if I accept the consumer expectations test, what besides the one time he looked at the doctor's machine makes it a fact this is defective? Because I understand you want me to go with the consumer expectations test, and you don't want to have to put forth an expert in order to survive summary judgment, even though the district court said you did. So I was looking around to find out what evidence there is. The evidence that we submitted, Your Honor, we have nothing more than what you stated. The plaintiff tested it. The plaintiff used it every day, relied on it, giving him normal results. Had it been giving him correct results, we wouldn't have been where we are. He wouldn't have had his stroke. I think Judge Oliver has a question. Now, you have one other thing that you have to look at. So he's relying on it every day, and it's giving him a good reading, right? Correct. And how do we know it's defective? That's the question. Now, Dr. Grossman testified, right, in his deposition, that Robert's stroke was caused by high blood pressure. Correct. Did he do that? We concede, yes. We concede that his stroke was caused by the high blood pressure. No, I'm not asking you to concede anything. That's important to your case, isn't it, that it was caused by high blood pressure? And then the question is, how could that be? Correct. If you're checking him every day and he's saying he doesn't have it. That's correct. That's what we're saying, is he's looking at this meter every day. I mean, that's your argument. Correct. I'm not, you know. Well, I guess, and there, your other argument, or I guess this is what you're suggesting, then we are to piece this along and say, and now, because every day one had normal blood pressure on the machine, that one can take these additives that he determined on his own to take and stop taking his blood pressure. But that's just mitigation? Or that's just a defense? I mean, I'm trying to take the whole blend of the evidence, and I'm trying to say, how do I make this machine defective? And that's where I'm asking you for more. I believe that his not or stopping to take the medication. One, he did call once, and the doctor said, if your blood pressure is under control, and this isn't the evidence, go ahead and reduce your meds. Didn't ever say quit, did he? It never said quit, but that becomes a question of reasonableness, I believe. Okay. So that's just an argument in defense that goes to the jury? That goes. Is that what you're suggesting? Yes, Your Honor. So when you stand up on opening statement, and you say to the jury, this product was defective, what's the defect? Is it a design defect? Is it a manufacturing defect? How is it defective? What are you going to say to them? If this case goes back to trial. I believe it's a defect in its operation, in that it's design. What's wrong with the design? It's giving false readings. Well, how do you know that? I mean, in terms of the design. What about the design is creating false readings? I mean, the reason I say that is because normally you take a product case, you've got either a warning defect, you've got a manufacturing defect that's designed correctly but manufactured incorrectly, or you've got a design flaw. And when you go to trial on a product's case, you have an expert that said this product is defective because it was designed improperly, and here's the design defect, and it could have been cured by this. Or that it was manufactured. The design was fine, but it was not manufactured in accordance with the defect. And it seems to me you don't have any of that in this case, right? All you have is saying I had normal readings at home and in the doctor's office I had high readings. Therefore, the product must be defective. That's it, right? And that they're touting it as the best on the market and that it is. . . It's a failure to warn case as well. I mean, they have a warning in it, don't trust this. . . Go to your doctor, but on the same token, this is the best thing that you can ever do. You'll get better readings at home than you will at the doctor, misleading you to believe it even further. Well, I suppose it's just very curious because in a product's case, most people go out and get an expert and they say, here's what's wrong with this product. And I read through all this, I'm left with your allegation that there must be something wrong with this product. We don't know what it is. Is that where we are in this case? At this point, that is where we are. And discovery's closed? It is at this point. Yeah. Okay. I mean, that may or may not be enough, but that's sort of my concern on a product's theory is that, you know, we don't know what the defect is. Do you want to reserve some time for rebuttal? Two minutes.  Thank you. Good morning. May it please the Court. My name is Sherry Thome and I represent the appellees. In this case, the plaintiff is trying to shift the entire burden of proof on his case on every element to the defendants. And what he wants to do is he wants to stand up in court and testify, this product is defective and it caused my damages simply because I say so. The judge made some mistakes here, right? Would you agree? I wouldn't concede that the judge made any mistakes, Your Honor, but. Any judge? You're defending me and my record, yeah. But he required expert testimony in this case, right, from the plaintiff? Yes, he did, Your Honor, and that was supported by Nevada law. What the judge required is that the plaintiff have expert medical, an expert doctor, medical expert testimony to establish causation. And there is support for that under Nevada law. In Dow v. Malem, the Nevada Supreme Court said generally you do use expert testimony. Well, generally or, I mean, you can use it, but can you not, can you have a case where you don't use it and still prevail? You know, I'm sure that there's some example of a case where you could say that you don't need an expert, but the general rule in Nevada is that you do. And this case doesn't. Just a minute. Is that in a products liability case? Dow v. Malem, yeah. Yes, Your Honor. Well, I guess I looked at these cases, and I'm having a tough time suggesting that Nevada really does say you have to have a medical expert in this kind of a case to prove the defect. Oh, well, I'm starting with causation, Your Honor. Okay. I would agree with you that it is unclear under Nevada law whether you need an expert to prove, establish a defect. But I'm looking at the causation prong of the test, because you do have to show that the product is defective and unreasonably dangerous. Well, I have the same concern. Sorry for interrupting you, but I have the same concern, which is we all know that in a medical malpractice case you have to have medical testimony to a reasonable degree of medical certainty. I'm not sure that standard really applies when we're talking about causation in a products case, and it seems to me the district court may have erred in imposing that highest standard. In other words, you can say, I guess I'd just leave it at that. It's odd to me that you would require medical testimony as expert testimony to show causation in a products case. Well, look at the type of case that we have. It's a blood pressure monitor, and he had a stroke. So did the monitor, a defect in the monitor, cause his stroke? Well, you know, a doctor doesn't know anything about a monitor. I mean, that's the – and that's not to show damage to a degree of medical certainty traceable to that, I think is really a high burden for that. The question is whether or not the monitor is defective, and you can show it's defective. I think even in the absence of an expert, even if the judge had said you do not need an expert, I don't think the plaintiff could have established causation on this record. Well, perhaps. I mean, my concern is I'm not sure that the district court correctly analyzed causation, and if so, then maybe it needs to go back for reanalysis under the correct standard. Well, Nevada, we really don't have – there isn't a lot of law on product liability and causation, and the general rule, as I said in Dalvie-Malum, is generally you need an expert to show causation in a products liability case. Well, but my worry is that the district court found that Roberts had presented no expert testimony, not showing causation, but establishing that the monitor was defective. Well, he did. He found both. Well, I looked very carefully at what he did. I guess you'd have to show me where he went really to causation, but it seemed to me that what he was really suggesting is the blood monitor was – there's nothing to say it was defective. Well, that's true as well. He mentioned both in his opinion. I think when he talked about proving causation to a reasonable degree of medical certainty, he was referring to the causation prong. But he also said the plaintiff could not establish evidence sufficient to satisfy Celotex that there was a defect in the product. Now, the plaintiff cites this, the consumer expectations test, and the cases in Nevada that have dealt with that, very few of them, as is common in Nevada. And in each of those cases, the parties had experts. And so we don't really have a situation similar to this case in Nevada where the plaintiff provides no expert whatsoever and says, you know, you have to decide this case based solely upon my testimony. So the judge also found, the trial judge also found, that he failed to satisfy his burden on his claims. So whether he has an expert or whether he doesn't, he hasn't satisfied his burden of proof. He hasn't established that there's sufficient evidence that a jury could find more likely than not that there's a defect in this product, and then that defect caused his damages. Kennedy, that's because you didn't have any expert to put that information forward. I mean, isn't that a fair reading of the case? As far as the defect, because the Court didn't specifically hold on that, I mean, you certainly could assume from the Court's opinion that he didn't have any expert witness testimony. But whether you look at it under an expert standard or whether he doesn't have an expert, the only thing that shows that he had it, that there was a defect in the machine, his only proof is there must have been a defect because I had a stroke and I was using this machine. Does the trial court rely on your expert in reaching this conclusion? Do you rely at all? It doesn't appear so from his opinion, Your Honor, that he relied on our expert. There's a potential problem there if he had, right? Well, there may be, because under the cases that the plaintiff has cited, sure, it should have been an affidavit. Testimony should have been presented by affidavit. There was no affidavit. There was no affidavit. I agree. And he objected there, and he objected to that. He objected to that, and the district court did not rule on those objections. But what the district court did say is it cited Rule 56 and said that he could consider affidavits, discovery materials, disclosures in the file. So had he wanted to consider it, I suppose it was within his discretion to do so, although even if he abused his discretion. Well, material on file, you still have rules, evidentiary rules. You've got to apply to those materials on file. I mean. Yes, that's correct, Your Honor. Even if he did in some way rely on it, which there isn't any evidence in the opinion that he did, it would be harmless error because he didn't cite it as a basis for his ruling, and because there's no evidence that he relied on it, it would be harmless. Well, here's the part of the district court's opinion that concerns me. The district court says, To prove causation, a plaintiff must produce expert medical testimony opining to a reasonable degree of medical certainty that the allegedly defective product caused the plaintiff's injury. I mean, that's counter to the general notion in products law. It seems to me, I'm not sure it's supported in Nevada law, that you need a medical expert opining to a reasonable degree of medical certainty that the defective product caused the plaintiff's injury. Well, the plaintiff still must establish, still has the burden to establish causation, and under the district court cited, it's actually its own decision in another case, near Lomax, that had to do with tasers. I know, but that doesn't really help you. No, but he did rely upon Morsicato, which is in the medical field, and that's what he used. Right. Yeah, that's why I think the district court may have made an inferential leap, because it's certainly true in the medical field you need that kind of proof of causation, but I've just never seen it imported into. Well, I would just refer to the court, to the Dalby-Malem, just where they make the general comment that generally you need an expert to establish causation, and I would agree that I'm sure there's cases where that may not apply, but I do not believe this case is one of them, given the admissions in the case. Well, the problem comes in this particular matter, and that's, I guess, why I focused on defective product. There certainly is testimony in the record that high blood pressure caused the problem, correct? Correct. And there is expert testimony suggesting that that's what caused it. That's correct. So what we're really focused on then is what is the cause of the high blood pressure. Well, yes. That's what we're really focused on, and so it seems to me, and now let's back up once again, it seems to me then we're really focusing on was there a defective product which would have caused this. Now, we're not talking about the actual cause of the damage, but we're talking about the circumstance of the breach or what was happening, and at that point the district court suggested a doctor had to say that. Now, again, I'm having trouble based on Nevada precedent, and even my own sense, the doctors would know one whit about whether this was defective or not. Well, I would agree the district court said that he didn't establish his burden, and he should have had some type of expert. Now, the district court said a medical expert. He should have had some type of expert to testify that this product is defective. It's not working as it's intended. It's extraordinarily dangerous. And that's also what the consumer expectations test, even if you look at that test as to definition of defect, it's the product is unreasonably dangerous, and it's not within the ordinary expectation of the consumer. But there isn't any evidence of that in the record. All there is is plaintiffs saying this is defective. Right. What's your best Nevada case that says in a product's case you always need an expert? I would say Dalby Malem would be the best because it discusses we don't really have anything else. Right. So, I mean, maybe. But you've got to be able to establish the defect. How do you establish to the defect? No, I don't quarrel with you on that. Okay. But we have to look at what the district court said. And the district court seemed to impose a medical standard on a product's case and seemed to be saying you don't have an expert, you don't get to get to a jury. I'm not sure either of those propositions are quite true. I do think that there must be evidence of defect and causation. And the plaintiff can't be the only one offering that evidence. He's not confident to do so. He certainly isn't a medical professional. He's no expert in a blood pressure monitor, how it works, how it should work, what's supposed to happen, what can affect the readings for a monitor. And so I don't think him, his testimony alone saying it's defective can be sufficient under that. But that analysis is far, far different from what the district court said. Well, in the end, the district court said he didn't meet his burden. So the word on de novo review, and so this Court can look to see did he meet his burden because discovery is over. This is all he has to work with. And if we go to trial on this case, we're ripe for a directed verdict. But if he has testimony, you're focusing on the product, but he has circumstantial testimony that it was giving low readings when his pressure was high, it seems to me. It's inferential. Well, we infer in cases and all the time. I mean, that's permissible, some inferences. But beyond that, let's go to your causation issue. I know we've been focused on whether it's a doctor or whether it's some professional regard to the product. But really the causation issue kind of goes this way. If he had known that the pressure was – that the product wasn't operating properly, would he have been able to keep his blood pressure in check such that he would not have had the stroke? Well, I think the record reflects that he stopped taking his medicine. So what was actually controlling his blood pressure, he stopped doing. So he caused his stroke. Well, it seems that you could stop taking it if your pressure was okay. But the question is, would he have had the stroke, which he had, if the monitor had been working properly, he could have still – I mean, somebody has to tie that up. He can – And you're right, Your Honor. Someone has to tie that up, and he has to do it, and he has to show it's more likely than not. He has to meet that 51 percent burden in order to overcome summary judgment and to establish his claim sufficient to, you know, satisfy Celotex. He hasn't done that. He can't do it. And under Nevada law, is it sufficient for proximate cause in a product's case that the defect be a substantial contributing factor? Well, it has to be the cause. But for an approximate cause, you have to show the 50 percent. Right. I mean, you have to have a legal cause. But, I mean, is there an overlay of substantial contributing factors? Let me put my question more clearly. Under Nevada law, if you have multiple causation, what's the test? It's 51 percent. And I believe that in one of our newer cases, the Williams case that just came out, they mentioned that you have to show it by over 50 percent, so 51 percent. Right. And that just recently came out. So if you're only a 30 percent cause, then they can't collect from you? Yes, because you can show that the defective product caused the injury. It's my understanding. You know, there's not a lot of clear law on it. On the other hand, if a jury were to find that he was 49 percent negligent and the defect caused 51 percent, then he recovers? Then he could recover. Yeah. Okay. Under Nevada law. Any further questions? No. Okay. Thank you very much for your argument. Thank you very much. I believe, Your Honors, hit some very important notes. Circumstantial evidence has always been admissible to prove certain items, and we have circumstantial evidence here of this product being defective. And, again, the defendants just want to take this blood pressure monitor and say, take that blood pressure monitor and say, Don't even consider it. He smoked. He did all these things. It's his fault. He stopped taking his medication. Why? The big question is, why did he stop taking his medication? Your Honor said, if the blood pressure monitor was giving him correct readings, and he says it in his declaration in support of the opposition, I would never have stopped taking my medications if the blood pressure monitor was telling me I had high blood pressure. Your Honor may have been giving him correct readings, and he was under other circumstances where he was read higher. We just don't know on this record. I understand the argument, but maybe it's given the paucity of Nevada law, we ought to certify the question. Is circumstantial evidence enough to get to a jury in a products case? That's the main note. You're on sort of the other end of the extreme. I tend to think, although I want to study it some more, that you're not required to get an expert, but maybe more than circumstantial evidence is required. And I also agree that the judge should have ruled on the objections that sustained him, and the fact that he didn't, and there's that report sitting there. Why didn't you ask him to? He ruled, and why didn't you ask him to? If that was my error, I accept responsibility for that. I mean, you've got a D.J., and he's got all this in front of him, and you've got a motion, and it's very vital to your case as to whether he should look at this expert. It seems to me it would be normal that you'd ask him. The fact that I objected, I believe, was my asking him to. Only an objection is necessary? That's all that's required under the rules? As I said, I take responsibility not to my client, to his detriment. That's not him. That's me. But I believe that I objected properly, and he just overruled them without ruling on them. Okay. I think we have the arguments in hand. Again, some interesting questions presented. Thank you both for your arguments this morning and your briefing. And the case will be submitted for decision. We'll be in recess for the morning. As you probably noted, we do have a law school class here, and we will be coming out and chatting with them later. I want to assure all of you that we do not discuss the cases argued today with them later. So you may count on that. So thank you for your arguments today, and we'll be in recess. All rise.
judges: Oliver, Thomas, Smith